Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CELINK<br><br>Peticionaria<br><br>v.<br><br>LA SUCN. FRANCISCO SANTIAGO ANGLERÓ T/C/C FRANCISCO ISAAC SANTIAGO MULERO T/C/C FRANCISCO SANTIAGO COMPUESTA POR MIRIAM SANTIAGO RODRÍGUEZ, FULANO DE TAL, FULANA DE TAL Y OTROS<br><br>Recurrida | TA2025CE00573 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Civil núm.: BY2022CV02569 (202)<br><br>Sobre: Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

Comparece ante este foro apelativo, CELINK (CELINK o parte peticionaria), mediante el recurso de epígrafe solicitándonos la revisión de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI), el 29 de julio de 2025, notificada el 31 de julio siguiente. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a *la Moción de Sentencia Sumaria* instada por la parte peticionaria.

Por los fundamentos que exponemos a continuación, determinamos denegar el auto de *certiorari* solicitado.

**I.**

El 18 de mayo de 2022, REVERSE MORTGAGE FUNDING, LLC presentó una demanda sobre ejecución de hipoteca *in rem.* En esta, alegó que el deudor principal, Sr. Francisco Santiago Angleró

(señor Santiago Angleró o el causante), falleció en o alrededor del 10 de enero de 2022; por lo que incluyó a la Sra. Miriam Santiago Rodríguez (señora Santiago Rodríguez o recurrida), por ser miembro de la Sucesión, más incluyó en la demanda a otros codemandados. Sin embargo, advirtió que no tiene una reclamación personal en contra de los herederos de la Sucesión. Solo los incluyó para notificarle sobre la acción *in rem* en contra del inmueble, por estos tener un interés propietario como miembros de la Sucesión y para que ejerzan su derecho de retener o disponer de la propiedad bajo las guías establecidas del Departamento de Vivienda y Desarrollo Urbano de Estados Unidos (HUD, siglas en inglés).

En esencia, se alegó que el 21 de agosto de 2008 el señor Santiago Angleró, conforme a un préstamo revertido, garantizado por la Administración Federal de Vivienda (FHA, siglas en inglés), suscribió un pagaré hipotecario a favor de The Money House, Inc., o a su orden. Indicó que se estableció el pago de una suma equivalente al diez por ciento (10.00%) del principal original, para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. Además, mencionó que, en garantía de dicho préstamo, el causante otorgó la Escritura sobre Primera Hipoteca núm. 188, en la misma fecha, mediante la cual constituyó hipoteca sobre el inmueble descrito en la demanda. Afirmó que tanto la propiedad como la hipoteca constan inscritas en el Registro de la Propiedad.

Agregó que es tenedora de buena fe del pagaré hipotecario objeto de ejecución, y tiene el derecho a exigir el cumplimiento de la obligación conferida mediante el referido pagaré y la Escritura sobre Primera Hipoteca Núm. 188. Expuso que, ante la muerte del señor Santiago Angleró, declaró la totalidad de la deuda vencida a tenor con las disposiciones de la referida escritura. Aclaró que la propiedad no es la residencia principal de al menos un deudor sobreviviente.

Señaló, además, que al 30 de abril de 2022, la deuda principal ascendía a $253,993.67, más los intereses sobre dicha cuantía por $29,110.56, los cuales continúan acumulándose a razón de la tasa de interés corriente en el mercado; así como la suma estipulada de $24,700, para gastos, costas y honorarios de abogado. Manifestó que la deuda se encuentra vencida, líquida y es exigible.

Luego de varios trámites procesales, el 21 de febrero de 2023 la señora Santiago Rodríguez instó la contestación a la demanda en la que negó algunas alegaciones y aceptó otras. En especial, arguyó que reside en la propiedad objeto del caso y, entre las defensas afirmativas, incluyó que no se ha cumplido la exigencia de la Ley núm. 184-2012 referente al proceso de mediación compulsoria.

El 10 de agosto de 2023, REVERSE MORTGAGE FUNDING, LLC presentó solicitud sobre sustitución de parte.[1] En esta, solicitó que el TPI autorizara a CELINK como parte demandante, al ser la tenedora por endoso del pagaré hipotecario, habiéndolo adquirido en el curso ordinario de los negocios. Incluyó como anejo el Pagaré Hipotecario debidamente endosado a favor de CELINK. El TPI autorizó la petición mediante la Orden del 6 de septiembre de 2023.

Transcurridas otras incidencias procesales, innecesarias detallar, el 16 de octubre de 2024 CELINK presentó ante el foro recurrido una *Moción de Sentencia Sumaria* en la que propuso trece (13) determinaciones de hechos que, a su entender, están incontrovertidos los que permiten resolver el caso sumariamente.[2] Así, pues, solicitó al foro primario que ordene el pago de las sumas adeudadas, especificadas en la Declaración Jurada, mediante la ejecución de la hipoteca que recae sobre la propiedad de la recurrida. Asimismo, informó que la señora Santiago Rodríguez le

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 33.
[2] SUMAC TPI, Entrada núm. 60, a las págs. 3-4.

notificó al tribunal que desistía del proceso de mitigación de pérdidas y que no interesaba retener la propiedad.

Como anejos incluyó los siguientes documentos: Pagaré, Escritura Núm. 188 sobre Primera Hipoteca otorgada el 21 de agosto de 2008, *Certificación de Propiedad Inmueble* expedida por el Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Estudio de Título, Declaración Jurada Acreditando Deuda suscrita por Desiree Scavo, y Certificación Militar.

El 6 de noviembre de 2024, la recurrida presentó la correspondiente oposición al antedicho petitorio desestimatorio sumario.[3] En el escrito, esta aceptó como hechos incontrovertidos los propuestos por CELINK numerados 1 al 9 y 13. Además, confirmó que desistía del proceso de mitigación de pérdidas y que no podría retener la propiedad. No obstante, expuso que CELINK, en violación de la Ley *Fair Debt Collection Practice Act* (FDCPA, siglas en inglés) solicitó la solidaridad de la deuda en violación al contrato, escritura de pagaré y las regulaciones federales. Por lo que, entiende controvertidos tres (3) hechos esbozados por la parte peticionaria en su pedido sumario (núms. 10, 11 y 12).[4] Sobre este particular, argumentó que los $24,700 para costas y gastos de honorarios no son demostrados y detallados en la Declaración Jurada como un "actually performed" de forma que el TPI pueda concederles el remedio. También se indicó que los $400 por inspecciones contraviene lo dispuesto en el *Inspection and preservation of properties*. 24 CFR Ch. II, part 206, Sec. 206.140.

Por su parte, la recurrida especificó que existen las siguientes controversias: (1) se haya solicitado un remedio solidario en una acción *in rem* en contravención a la FDCPA; y (2) la liquidez de la demanda debido a que se solicita en la Declaración Jurada gastos

---

[3] SUMAC TPI, Entrada núm. 61.
[4] SUMAC TPI, Entrada núm. 61, a las págs. 2-3.

que no proceden y también procura en exceso de los honorarios de abogado. No se incluyó algún documento con la moción.

El 17 de abril de 2025, la parte peticionaria instó una *Moción Suplementaria a Solicitud de Sentencia Sumaria* en la que estableció que la reclamación no es solidaria, ni existe una reclamación personal contra los demandados.[5] Por lo que, aclaró que esto se debió a un error subsanable. Abundó que, aun cuando en la solicitud de sentencia sumaria se hizo referencia, la parte demandada adeuda "solidariamente" las cantidades allí mencionadas. Posteriormente, en el mismo escrito, se aclaró que "La parte demandante no tiene una reclamación personal en contra de la parte demandada toda vez que la presente acción es una In Rem...".

Respecto al cobro de los honorarios de abogado, CELINK planteó que no ha violentado las disposiciones del FDCPA en cuanto a la reclamación de los mismos y que de los documentos suscritos por el causante está claro que él consintió y se obligó, al constituir el pagaré e hipoteca, a cumplir con todos los términos y condiciones suscritos. Lo que incluye el pago de costas y gastos, incluyendo honorarios de abogado razonables y acostumbrados, e incurridos para obligar al cumplimiento del Pagaré Hipotecario.

La señora Santiago Rodríguez instó una *Solicitud de Desglose & en Oposición* mediante la cual advirtió que la antedicha moción es una réplica a su oposición a sentencia sumaria.[6] Por ello, le solicitó al foro *a quo* que fuera desglosada por ser tardía y por ser contraria a la Orden emitida y notificada por el TPI el 11 de diciembre de 2024 (SUMAC TPI, Entrada núm. 63). También adujo que en la moción CELINK no anejó desglose alguno de los gastos ni se añadió argumentos a su petición sumaria, simplemente la parte

---

[5] SUMAC TPI, Entrada núm. 68.
[6] SUMAC TPI, Entrada núm. 69.

peticionaria se limitó a replicar a sus planteamientos e inducir a error al tribunal.

El 23 de abril de 2025, el TPI celebró una vista para discutir la petición de sentencia sumaria presentada por CELINK y la correspondiente oposición.[7] Surge de la *Minuta* que la recurrida expresó que está opuesta a la concesión de los gastos de honorarios y a las inspecciones que detallan en la Declaración Jurada presentada por CELINK. La representación legal de la parte peticionaria respondió que la cláusula 6 de la Escritura sobre Primera Hipoteca establece lo relacionado a las inspecciones, las que pueden realizar durante el préstamo para identificar cuál es el estado de la propiedad.

Así las cosas, el 29 de julio de 2025, el foro primario emitió la *Resolución* objetada en la que coligió que existen controversias de hechos respecto a la liquidez de la deuda, por lo que el caso no puede ser resuelto sumariamente.[8] En consecuencia, declaró *No ha lugar* a la *Moción de Sentencia Sumaria* presentada por la parte peticionaria. La misma se notificó el 31 de julio siguiente. En esta, el foro recurrido esbozó diez (10) determinaciones de hechos incontrovertidos.[9] A su vez, razonó que existe controversia sobre "La deuda reclamada por la suma principal de $253,993.67, más los intereses sobre dicha suma en la cantidad de $31,377.38, los cuales continuarán acumulándose al 3.93% hasta su completo pago, más la suma equivalente a $24,700.00 para gastos, costas y honorarios de abogado según pactados por cantidad razonable según su valor en el mercado."[10]

Sobre este particular, el TPI razonó que:[11]

> Luego de revisado la totalidad del expediente judicial, de las alegaciones de las partes, los

---

[7] SUMAC TPI, Entrada núm. 70.
[8] SUMAC TPI, Entrada núm. 71.
[9] SUMAC TPI, Entrada núm. 71, a las págs. 3-4.
[10] SUMAC TPI, Entrada núm. 71, a la pág. 4.
[11] SUMAC TPI, Entrada núm. 71, a las págs. 4-5.

documentos anejados y a tenor con el estado de Derecho vigente procedemos a resolver. Estamos antes [*sic*] un caso en donde existe controversia en relación a la cuantía total de la deuda exigida.

El pagaré relacionado a este caso dispone, en lo pertinente que:

8. Si el acreedor hipotecario ha exigido el pago total inmediato, según descrito anteriormente podrá requerir al Deudor Hipotecario el pago de costas y gastos, incluyendo honorarios de abogado razonables y acostumbrados, e incurridos para obligar al cumplimiento del pagaré hipotecario. [ . . . ]. Énfasis nuestro.

Por su parte, de la declaración jurada presentada por la parte demandante en su Moción de Sentencia Sumaria indica que las siguientes cantidades, según los registros del negocio, le son adeudadas:

| | |
|---|---|
| a. Principal | $253,993.67 |
| b. Interest to 7/13/2022 | $ 31,377.38 |
| c. MIP | $ 10,478.12 |
| d. Services fees | $ 5,880.00 |
| e. Taxes | $ 11,783.46 |
| f. Appraisals | $ 895.00 |
| g. Inspections | $ 440.00 |
| h. Outstanding Advances | $ 7,428.75 |
| i. Total loan balances: | $322,276.38 |

El demandante reclama una suma equivalente al 10% del balance original para costas, gastos y honorarios de abogado aun cuando el pagaré no dispone tal porciento por honorarios de abogado. El pagaré no dispone una cuantía de diez por ciento (10%) como honorarios de abogados, sino que claramente indica que se cobrarán costas, gastos y honorarios de abogado razonables y acostumbrados e incurridos para obligar al cumplimiento del pagaré hipotecario. **De la declaración jurada no surge evidencia de estas costas, gastos y honorarios de abogado ni la forma en [qué] fueron computados.** El demandante se limita a informar estos gastos sin detallar la forma en que fueron computados por lo que se requiere el desfile de prueba sobre el particular. (Énfasis nuestro)

Inconforme, el 14 de agosto de 2025, CELINK instó una *Moción de Reconsideración* la cual fue declarada *No Ha Lugar* por el TPI mediante la Resolución emitida y notificada el 10 de septiembre de 2025.

Todavía en desacuerdo, la parte peticionaria acude ante esta *Curia* mediante el recurso de *certiorari* de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN SOMETIDA POR LA PARTE

DEMANDANTE RECURRENTE, TODA VEZ QUE SE EVIDENCIÓ QUE EL RECLAMO DE 10% POR CONCEPTO DE [HONORARIOS] DE ABOGADO SURGE DE LA ESCRITURA DE HIPOTECA Y LA INSCRIPCIÓN DE LA MISMA EN EL REGISTRO DE LA PROPIEDAD.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO ACOGER LA DECLARACIÓN JURADA SOMETIDA CON LA SOLICITUD DE SENTENCIA SUMARIA ALEGANDO QUE LA MISMA NO CUMPLE CON LOS REQUISITOS DE LA REGLA 36 DE PROCEDIMIENTO CIVIL, VIGENTE, EN SU CONSECUENCIA DETERMINAR QUE PROCEDE PASAR PRUEBA SOBRE ESTE ASUNTO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DICTAR SENTENCIA SUMARIA, PARCIAL O TOTAL, A FAVOR DE LA PARTE DEMANDANTE RECURRENTE.

El 17 de octubre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 27 de octubre de 2025 para expresarse. Llegado ese día, se cumplió con lo ordenado por lo que nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas

por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, 205 DPR 163,* 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo

intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

### III.

En esencia, la parte peticionaria planteó que el TPI erró al denegar su solicitud de sentencia sumaria a pesar de que se evidenció que el reclamo del diez por ciento (10%) por concepto de honorarios de abogado surge de la Escritura de Hipoteca. A su vez, señaló que incidió el foro primario al no acoger la Declaración Jurada presentada en el petitorio, al entender que la misma incumple con los requisitos de la Regla 36 de las de Procedimiento Civil, *supra*, y, en su consecuencia, determinar que resulta necesario presentar prueba al respecto.

De entrada, advertimos que la controversia aquí planteada, por tratarse de la denegatoria de una moción de carácter dispositivo, está incluida en las instancias que esta *Curia* puede atender de conformidad a la Regla 52.1 de las de Procedimiento Civil, *supra*. No obstante, examinada la determinación recurrida a la luz de las disposiciones de la Regla 40 de nuestro Reglamento, *supra*, entendemos que no procede nuestra intervención con la misma.

En el Pagaré Hipotecario (*Primer Pagaré Hipotecario con Tasa de Interés Ajustable- Conversión del Capital Acumulado en la Vivienda*) suscrito el 21 de agosto de 2008, por el señor Santiago Angleró por $247,000, se estableció que si el acreedor exige el pago total puede requerir al deudor **el pago de costas y gastos, incluyendo honorarios de abogado razonables y acostumbrados**

**e incurridos para obligar al cumplimiento del Pagaré Hipotecario**. Asimismo, en la Escritura sobre Primera Hipoteca Núm. 188 otorgada el 21 de agosto de 2008 por el causante y THE MONEY HOUSE, INC, ante el Notario Lcdo. Raúl Rivera Burgos, se estipuló, que el deudor viene obligado a satisfacer, entre otras cuantías, el pago de una cantidad líquida de $24,700, que este asume pagar sin el requerimiento previo de liquidación y aprobación por parte del Tribunal para **cubrir costas, gastos y honorarios de abogado** en caso de que el tenedor del Primer Pagaré tenga que proceder con la ejecución de la hipoteca o procedimientos para el cobro por la vía judicial.

Por su parte, en la Declaración Jurada suscrita por Desiree Scavo, incluida como anejo en la *Moción de Sentencia Sumaria* instada por CELINK, se incluyeron las siguientes partidas adeudadas:

    a. Principal                    $253,993.67
    b. Interest to 7/13/2022        $ 31,377.38
    c. MIP                          $ 10,478.12
    d. Services fees                $ 5,880.00
    e. Taxes                        $ 11,783.46
    f. Appraisals                   $ 895.00
    g. Inspections                  $ 440.00
    h. Outstanding Advances         $ 7,428.75
    i. Total loan balances:         $322,276.38

Del análisis de este desglose, no surge claramente cuáles de estas partidas se suman para computar la cuantía relacionada con costas, gastos y honorarios de abogado razonables y acostumbrados e incurridos según establecido en el Pagaré Hipotecario; así como en la Escritura sobre Primera Hipoteca Núm. 188. Más bien, mediante estas se intentan cobrar gastos que, a nuestro entender, no cualifican como costas del pleito y honorarios de abogado. Es decir, entendemos que a dicho total se le tiene que añadir otra cuantía incierta para costas y gastos legales, lo que aumentaría la reclamación monetaria. Asimismo, no cabe duda de que se hace necesario presentar prueba de las antedichas cuantías reclamadas

para conocer si procede su cobro y en qué forma fueron estas fueron calculadas. Por tanto, no estamos ante una deuda que sea cierta lo que incide sobre su liquidez y exigibilidad.

El Tribunal Supremo ha expresado que, cuando se presenta una demanda en cobro de dinero, la parte demandante debe alegar que la deuda reclamada es una líquida, que está vencida y es exigible. *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). **Una deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada"**. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021); *Ramos y otros v. Colón y otros*, supra; *Freeman v. Tribunal Superior, Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Es decir, que **"la deuda es líquida cuando se sabe cuánto es lo que se debe"**. *Ramos y otros v. Colón y otros*, supra. Nuestro Tribunal Supremo ha expresado que: "El vocablo 'líquida' en relación con una cuenta, en lenguaje corriente significa **el saldo 'o residuo de cuantía cierta que resulta de la comparación del cargo con la data'**." *Guadalupe v. Rodríguez*, supra.

En cuanto al término "exigible refiriéndose a una obligación, significa que puede demandarse su cumplimiento." *Carazo v. Srio. De Hacienda*, 118 DPR 306, 315 (1987); *Guadalupe v. Rodríguez, supra*. Para determinar si las deudas están vencidas se debe atender al carácter de las mismas, es decir, si son pagaderas desde luego, como ocurre con las puras y las sujetas a condición resolutoria, o si son pagaderas cuando se venza un plazo o se cumpla una condición, si están sujetas a condición suspensiva. Artículo 1150, 31 LPRA sec. 3222; J.R. Vélez Torres, *Derecho de Obligaciones*, Ed. 2da, 1997, págs. 220-221.

En fin, examinada la determinación impugnada a la luz de las disposiciones de la Regla 40 de nuestro Reglamento, *supra*, y ante la ausencia de prejuicio, parcialidad o error en la aplicación de una

norma jurídica, estamos impedidos de variar el dictamen cuya revisión se nos solicita. Tampoco quedó demostrado que nuestra intervención, en esta etapa de los procedimientos, evitaría un fracaso de la justicia.

**IV.**

Por los fundamentos antes expuestos, determinamos denegar el recurso de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones